UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| MARK A. PULLEN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CIVIL NO. 3:14cv1967 |
| CAROLYN COLVIN, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) as provided for in the Social Security Act. 42 U.S.C. §416(i); 42 U.S.C. §423; 42 U.S.C. §§ 1382, 1382c(a)(3). Section 205(g) of the Act provides, <u>inter alia</u>, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since August 9, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: mood disorder due to a general medical condition; mild mental handicap; intermittent explosive disorder; depressive disorder, NOS; chronic obstructive pulmonary disease ("COPD"); history of atrioseptal defect with repair; history of ablation of supraventricular tachycardia; back pain; and knee pain (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift 50 pounds occasionally and 25 pounds frequently. The claimant can sit, stand, and walk without any restrictions. He has no restriction in pushing or pulling with the upper or lower extremities. The claimant can frequently climb ramps or stairs; and never climb ladders or scaffolds. He has no restrictions with balancing, bending, stooping, crouching, crawling, fine manipulation, or gross manipulation. There are no visual or communicative restrictions. The claimant is restricted from operating around high magnetic fields due to his pacemaker. Furthermore, the claimant is limited to unskilled work with no more than occasional contact with the general public and his peers. The claimant needs a job that is regular in expectations. Finally, the claimant is precluded from working at a fast-paced job.

6. The claimant is capable of performing past relevant work as a stocker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 9, 2009, through the date of this decision (20 CFR 404.1520(1)).

(Tr. 20-32).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on May 15, 2015. On July 20, 2015, the defendant filed a memorandum in support of the Commissioner's decision, and on August 3, 2015, Plaintiff filed his reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step four was the determinative inquiry.

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on December 14, 2011, alleging a disability onset date of August 9, 2009. The Disability Determination Bureau

(DDB) denied the Plaintiff's claims on March 23, 2012. He requested reconsideration, but his claims were denied again on April 16, 2012. Plaintiff filed a request for an administrative hearing on April 24, 2012. On May 15, 2013, Plaintiff appeared in Indianapolis, Indiana before ALJ John Metz. On June 14, 2013, the ALJ issued an unfavorable decision. Plaintiff filed a request for review by the Appeals Council of the Office of Disability Adjudication and Review which declined to review his decision on August 18, 2014.

Plaintiff's primary impairment is his mental handicap. However plaintiff also has heart problems. Dr. Bahler, who is board certified in critical care medicine, internal medicine, and pulmonary disease, was Plaintiff's treating physician in 2007 and 2008. Dr. Bahler diagnosed Plaintiff with sarcoidosis, and chronic obstructive pulmonary disease (COPD). (Tr. 236). In addition, chest X-rays revealed a large bulla in the left lung, and fibrocalcific scarring, consistent with granulomatous disease. (Tr. 234). Dr. Bahler also diagnosed Plaintiff with dyspnea.

Dr. Ritchie, who is board certified in cardiovascular disease, internal medicine, and interventional cardiology, was Plaintiff's treating cardiologist in 2009-2010. In August of 2009, an echocardiogram revealed the following issues: mildly reduced left ventricular systolic function at rest due to focal wall motion abnormalities in the distal anterolateral and apicoseptal walls; mild concentric left ventricular hypertrophy; mildly to moderately dilated right sided chambers; evidence of 0.8 cm atrial septal defect; mild pulmonary insufficiency and tricuspid regurgitation with some mitral regurgitation; slightly myxomatous mitral valve that comes to vertical and maybe prolapses. (Tr. 240).

A transesophageal echocardiogram confirmed the atrial septal defect. (Tr. 242). A subsequent echocardiogram in October of 2009, after the open heart surgery, indicated the left

5

ventricular function at rest was normal, but there remained an abnormality in the septal wall, and there was continuing moderate pulmonary insufficiency, mild tricuspid regurgitation, a wisp of mitral insufficiency and mild mitral valve prolapse. (Tr.244). A subsequent echocardiogram in November of 2009, after the placement of a pacemaker near the right ventricle, showed mitral valve prolapse, mild diastolic dysfunction with mild regurgitation in the pulmonary, tricuspid and mitral valves.

Dr. Paul J. Roberts is a clinical psychologist who conducted a consultative mental status examination of Plaintiff on February 15, 2010. Dr. Roberts also utilized the Wechsler Adult Intelligence Scale IV (WAIS-IV) test. (Tr. 571). Plaintiff had a full scale IQ of 58. (Tr. 571). Dr. Roberts also opined on the validity of the test results:

> It is this examiner's belief within a reasonable degree of neuropsychological/ medical certainty that the patient provided a demonstration of his best possible effort. Accordingly, it is believed that the aforementioned findings reflect a valid and accurate assessment of this individual's level of neuropsychological functioning, based on a comprehensive mental status examination. It is not believed that the patient actively engaged in symptom exaggeration, symptom embellishment, feigning or malingering. Based upon the patient's performance on the mental status examination, the examiner believes the patient is not capable of managing his financial affairs without supervision. (Tr. 572).

Dr. Warr was a consultative examiner who did not review Plaintiff's medical records. (Tr. 614). Dr. Warr noted no restrictions in Plaintiff's range of motion (Tr.616) and opined that Plaintiff could stand and walk for at least two hours in an eight hour work day. (Tr. 614).

Dr. Eskonen is a non-examining source who completed a physical residual functional capacity assessment, and opined that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, and could stand and walk "about 6 hours in an 8-hour workday." (Tr. 618).

Dr. Heroldt is a clinical psychologist who conducted a consultative examination of

Plaintiff on March 21, 2012. Dr. Heroldt noted the following: (1) Plaintiff thought the sun rises in the south; (2) Plaintiff thought there were 400 weeks in a year; (3) Plaintiff was unable to name four presidents of the United States since 1950; (4) Plaintiff was unable to understand simple proverbs; (5) Plaintiff's memory was below average; (6) Plaintiff had "moderate to severe difficulty" with simple arithmetic calculations; and (7) Plaintiff was unable to perform serial 3s. (Tr. 626-627).

Dr. Heroldt diagnosed Plaintiff with intermittent explosive disorder, a GAF of 60, and indicated Plaintiff was not capable of managing his own funds because of his "limited arithmetic ability." (Tr. 627).

Plaintiff met with Mr. Richard Voorhees, a licensed clinical social worker, at Four County Counseling Center. Mr. Voorhees did an Intake/Biopsychosocial Report on June 6, 2012. Mr. Voorhees concluded the following: (1) Plaintiff had a below average IQ; (2) Plaintiff demonstrated a flat affect and his appearance was disheveled; and (3) Plaintiff was recently hearing voices telling him to kill himself. (Tr. 690). Mr. Voorhees diagnosed Plaintiff with major depressive disorder, single episode, moderate, with a current GAF of 47, indicating serious symptoms and an inability to keep a job. (Tr. 691-692). After the initial intake, Four County Counseling Center was working with Plaintiff to help him get an ID and Medicaid, but that was unsuccessful. (Tr. 680).

In support of reversal or remand, Plaintiff argues that the ALJ's finding that he does not have an impairment that meets or medically equals the severity of a listed impairment is not supported by substantial evidence. If a claimant has an impairment that meets or equals an impairment found in the Listing of Impairments, a claimant is presumptively eligible for benefits.

7

(20 C.F.R. § 404.1520(d)). *Minnick v. Colvin*, 775 F.3d 929 (7th Cir. 2015). In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing. *Barnett v. Barnhart*, 381 F.3d 664 (7th Cir. 2004).

The present record demonstrates that Plaintiff's valid full scale IQ is 58. (Tr. 571). In addition, Dr. Robert opined that the WAIS-IV results "reflect a valid and accurate assessment of this individual's level of neuropsychological functioning, based upon a comprehensive mental status examination. It is not believed that the patient actively engaged in symptom exaggeration, symptom embellishment, feigning or malingering. The examiner believes the patient is not capable of managing his financial affairs without supervision." (Tr. 572).

Dr. Robert's WAIS-IV IQ test results are objective evidence. "Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms . . . may have on your ability to work. We must always attempt to obtain objective medical evidence, and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled." (20 C.F.R. § 404.1529 (c)(2)).

In the present case, the ALJ noted the WAIS-IV test results, and acknowledged that Plaintiff's full scale IQ was 58. (Tr. p. 28). An IQ of 59 or less brings Listing 12.05B into play. However, the ALJ did not mention Listing 12.05 by name or give even a perfunctory analysis of that listing. The Commissioner acknowledges that the ALJ failed to evaluate whether Plaintiff met or equaled Listing 12.05B.

There are several different ways to satisfy Listing 12.05. Plaintiff contends that the objective evidence of the WAIS-IV IQ testing results show that he meets Listing 12.05B.

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \* \* \*
>
> B. A valid verbal, performance, or full scale IQ of 59 or less. (20 C.F.R. § 404, Subpart P, App. 1 § 12.05B)

The only medical evidence in the record that questions the validity of the objective IQ testing was a note of a non-examining source who indicated the WAIS-IV results seemed low since Plaintiff could drive a car, and perform other activities of daily living. (Tr. 631). She further noted there were no school records with IQ scores. (Tr. 631). The Courts have addressed the issue of whether an IQ test given at a subsequent time should be assumed to reflect the claimant's IQ during the relevant period. *Guzman v. Bowen*, 801 F.2d 273 (7th Cir. 1986). "In the absence of evidence leading to a contrary result 'we must and do assume' that an IQ test taken after the insured period correctly reflects the person's IQ during the insured period." *Id*. at 275. Plaintif argues that the Social Security regulations demonstrate that once it has been established that the IQ is 59 or less, no other evidence of disability is required.

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It contains four sets of criteria . . . . If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. **Paragraph A and B contain criteria that**

9

> **describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations.** (emphasis added). (20 C.F.R. Pt. 404, Subpart P, App. I, § 12.00(A)) (emphasis added).

It is an established fact that Plaintiff has a valid full scale IQ of 58. Both Dr. Roberts and Dr. Heroldt opined Plaintiff was not even capable of handling his own finances. The Commissioner argues that "Plaintiff did not meet the second requirement of 12.05B". The Commissioner takes the position that Plaintiff was required to demonstrate deficits in adaptive functioning by the time he was 22 years old. This Court agrees that the Listing seems to have two steps to the analysis: "If your impairment satisfies the diagnostic description in the introductory paragraph AND any one of the four sets of criteria, we will find that your impairment meets the listing." (*Id*. emphasis added). In *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007), the Seventh Circuit noted that "If **in addition** to being retarded within the meaning of the regulation the claimant has an IQ below 60, she is deemed disabled, without more. 20 C.F.R. Pt. 404, Subpt. P, App. I, § 12.05(B)." (Emphasis added). Thus the Seventh Circuit also applies a two-part analysis.

Thus the question in the present case is whether the Plaintiff has shown deficits in adaptive functioning before age 22. Plaintiff indicated that he was in Special Education classes in school, but was able to graduate high school. However, as noted above, there are no school-aged IQ scores in the record. In light of the fact that the ALJ did not properly address the issues presented by Listing 12.05B, the Court will remand for a more thorough investigation into whether Plaintiff had shown deficits in adaptive functioning before age 22.

## Conclusion

On the basis of the foregoing, this matter is REMANDED to the Commissioner for further proceedings consistent with this opinion.

Entered: August 31, 2015.

s/ William C. Lee
William C. Lee, Judge
United States District Court
